UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIXIE MOTORS, LLC d/b/a<br>DIXIE RV SUPERSTORES, | CIVIL ACTION |
| VERSUS | NO. 15-1247 |
| MOTOR HOME SPECIALIST, LP<br>and MOTOR HOME SPECIALIST<br>MANAGEMENT, LLC | SECTION "N" (1) |

**ORDER AND REASON**

Presently before the Court is Defendants', Home Motor Specialist, LP and Motor Home Specialist Management, LLC, "Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue" (Rec. Doc. 15). Plaintiff, Dixie Motors, LLC, d/b/a Dixie Motors Superstores ("Dixie Motors"), asserts the following claims against Defendants: (1) unfair competition based on infringement and misappropriation under the Lanham Act; (2) unfair competition based on trademark infringement of an unregistered mark; (3) unfair competition under Texas law; (4) violation of the Louisiana Unfair Trade Practices Act; and (5) civil conspiracy. Now, having reviewed the parties' submissions, the applicable law, and the record, the Court rules as follows:.

**I. Background**

This case arises from Defendants' online advertising practices and, specifically, its use of an online advertising service, Google Adwords, and Yahoo to steer potential shoppers of recreational vehicles ("RV") and related products to their website. (Rec. Doc. 1 at p. 4). Plaintiff is one of the largest RV outlets in the Southeast, with three sales and service locations in Hammond, Louisiana; Breaux Bridge, Louisiana; and Defuniak Springs, Florida. (*Id.* at p. 2). Plaintiff's principal place of

business is in Hammond, Louisiana. (*Id.*). Since at least 1996, Plaintiff has used the mark "Dixie RV" to identify its business and market its products and services. (*Id.* at p. 3). Plaintiff owns the mark "Dixie RV Superstores," which was registered by the United States Patent and Trademark Office on September 2, 2014. (*Id.* at p. 4).

Defendants are engaged in the same business as Plaintiff, selling RV's and ancillary products from a location in Texas. Motor Home Specialist, L.P., is a Texas limited partnership and, according to the complaint, owns all products sold by "Motor Home Specialist." (*See id.* at p. 1; Rec. Doc. 22 at p. 3). Motor Home Specialist Management, L.L.C., is a Texas limited liability company responsible for managing and operating all services and sales of products by "Motor Home Specialist." (Rec. Doc. 1 at p. 1-2).

On three occasions between September 2012 and April 2015, Plaintiff discovered that a Google search for "Dixie RV Hammond" and "Dixie RV Defuniak" returned the following result or a very slight variation thereof: "Looking for Dixie RVs? - We Ain't Just Whistling Dixie, www.mhsrv.com - (877) 528-7287." (Rec. Doc. 22 at p.2-5). On the first two occasions, Plaintiff's counsel contacted General Manager and Chief Operating Officer of Motor Home Specialist, L.P., Robert Brake, and ordered that the use of the mark "Dixie RV" cease and desist. (*Id.*). On the third occasion, Plaintiff decided to file the instant suit, arguing that "Motor Home Specialist is deliberately infringing upon the intellectual property rights of Dixie to target Dixie's customers in Louisiana." (*Id.* at 6).

## II. Law and Analysis

### A. Personal Jurisdiction

As is the case here, when a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing the Court's jurisdiction over the defendant. *Planet Beach Franchising Corp. v. C3Ubit, Inc.*, 2002 WL 1870007 at *1 (E.D. La. Aug. 12, 2002)

(citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985)). If the Court rules on the issue without first having a full evidentiary hearing, the plaintiff must make a *prima facie* showing of jurisdiction. *Id.* (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994)). The Court, in determining whether a sufficient showing has been made, accepts as true all uncontroverted allegations and resolves any factual disputes in the plaintiff's favor. *Id.* (citing *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir.1999)).

Before the Court may exercise personal jurisdiction over a nonresident defendant, the long-arm statute of the forum state must confer upon it the authority to do so. *See Latshaw*, 167 F.3d at 211. In addition, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Id.* In Louisiana, the long-arm statute extends jurisdiction to the full limits of due process. *Planet Beach*, 2002 WL 1870007 at *2. Therefore, the Court's focus in the present matter is whether the exercise of jurisdiction over Defendants would comport with the constitutional requirements of due process. *See id.*

Due process is satisfied when (1) the defendant has purposefully availed itself of the benefits and protections of the forum by establishing "minimum contacts" with that state; and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" inquiry is fact intensive, and the touchstone is whether "the defendant purposefully directed his activities towards the forum state, such that he could reasonably foresee being haled into court there." *Southern Marsh Collection, LLC. v. C.J. Printing Inc.*, 2015 WL 331919 at *1 (M.D. La. Jan. 26, 2015) (citing *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). Depending on the extent of a defendant's contacts with the forum, there are two distinct categories of personal jurisdiction: specific and general. *See id.* Here, Plaintiff argues only for specific jurisdiction. (Rec. Doc. 22 at p. 7).

3

If a nonresident defendant "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," then the Court has specific jurisdiction over that defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Fifth Circuit has broken down this inquiry into the following three-part test, which it appears to have first adopted in *Nuovo Pignone, SpA v. STORMAN ASIA M/V,* 310 F.3d 374 (5th Cir.2002):

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006)); *see also Pervasive Software, Inc. V. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 (5th Cir. 2012) (applying the three prongs of the test to determine whether a defendant's contacts with the forum through the internet established jurisdiction). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F.Supp.2d 602, 613 (E.D. La. 2013) (citation omitted). As long as "the plaintiff's allegations or evidence of defendant's internet activities can satisfy each prong of this test," then it is generally appropriate for the Court to exercise specific jurisdiction over the defendant. *Pervasive Software, Inc.*, 688 F.3d at 227.

Pursuant to the three-part test discussed above, the Court's first task is to determine whether Defendants purposefully directed their activities toward the forum. Defendants attempt to frame the

4

analysis around a discussion of the interactivity of an out-of-state business's website and its passive online advertising. If the allegations here followed such a script, it is well settled that passive websites and online advertisements alone are an insufficient basis for the exercise of jurisdiction over a nonresident defendant. *See, e.g., Mid City Bolwing Lanes & Sports Palace, Inc. v. Ivercrest, Inc.*, 35 F.Supp.2d 507, 511 (E.D. La. 1999), *aff'd*, 208 F.3d 1006 (5th Cir. 2000) (declining jurisdiction where the plaintiff offered no other facts showing that the defendant had "*any* contact with Louisiana other than the website's availability to Louisiana computer users.") (emphasis in original). However, the allegations show this case to be distinct. Defendants' advertising appears not to have been passive activity. The record suggests that, particularly through the use of Google Adwords, Defendants sought to increase traffic to the Motor Home Specialist website by rerouting consumers who used the term "Dixie Motors" in their internet searaches.[1] The fact that this practice continued after repeated warnings to stop by Dixie Motors – a known competitor located in a neighboring state – further supports Plaintiff's claim that Defendants were intentionally targeting a Louisiana business and its customers, many of whom were presumably located within the forum. As a result, the Court finds that Dixie Motors has made a *prima facie* showing that Defendants directed their activities toward the state of Louisiana, such that they should have reasonably anticipated being haled into court here.

The second prong of the analysis focuses on the relationship between a defendant's contacts with the forum state and the litigation. Its application to the present case is rather straightforward. Plaintiff's claims are the product of Defendants' allegedly deliberate targeting of it and its costumers.

---

[1] Google Adwords is an online advertising service that uses keywords and phrases, which are selected by the advertising business. Generally, use of the chosen keywords and phrases in an internet search triggers the appearance of the business' advertisement in search results and on websites. GOOGLE, https://support.google.com/adwords/answer/2497976?hl=en (last visited Jan. 5, 2016).

5

Therefore, the Court concludes that Plaintiff's case arises out of or results from Defendants' forum-related contacts.

The final prong of the analysis concerns whether the exercise of jurisdiction over a defendant would comport with traditional notions of fair play and substantial justice. "With respect to th[is] last prong, the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' under the five-factor test articulated by the Supreme Court in *Burger King*." *Autogenomics, Inc. v. Oxford Gene Tech.*, 566 F.3d 1012, 1018-19 (Fed.Cir. 2009) (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed.Cir. 2006)). Of the five guiding factors in *Burger King*, the most pertinent to the case *sub judice* include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; and (3) the plaintiff's interest in obtaining convenient and effective relief." 471 U.S. 462, 477 (1985). *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Here, Defendants' submissions omit discussion of the *Burger King* factors. Nonetheless, the Court finds that, in addition to Plaintiff, the state of Louisiana has a legitimate interest in seeing the dispute litigated here, in that it concerns the alleged targeting of a resident business and its customers. Moreover, the Court is unaware of any circumstances that would make litigating in this forum unusually burdensome for Defendants. Consequently, the Court finds that not only do Defendants have sufficient minimum contacts with forum state, but that its exercise of specific personal jurisdiction over them would be both fair and reasonable. The Motion to Dismiss for Lack of Personal Jurisdiction is denied.

### B. Venue

Defendants argue, alternatively, that Plaintiff's claims should be dismissed for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). The general venue statute is found at

28 U.S.C. § 1391(b), and it allows, in relevant part, for a civil action to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The statute further defines, for venue purposes, the residency of an entity named as a defendant is "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Having concluded, *supra,* that Defendants are subject to its jurisdiction, the Court finds venue properly lies in the Eastern District of Louisiana. Therefore, Defendants' Motion to Dismiss for Improper Venue is denied.

## IV. Conclusion

For the reasons stated herein,

**IT IS ORDERED** that Motor Home Specialist's "Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue" is hereby **DENIED**.

New Orleans, Louisiana, this 11th day of January, 2016.

_____
**KURT D. ENGELHARDT**
**United States District Judge**